COFFEY KAYE MYERS & OLLEY
BY:   ROBERT E. MYERS, ESQUIRE
         LAWRENCE A. KATZ, ESQUIRE
Suite 718, Two Bala Plaza
Bala Cynwyd, PA  19004
(610) 668-9800
(610) 667-3352 (Fax)                                    Attorneys For:  Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT D. JONES, | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| CONSOLIDATED RAIL CORPORATION | : | |
| (CONRAIL), | : | JURY TRIAL DEMANDED |
| | : | |
| Defendant | : | NO. |
| | : | |

## COMPLAINT

1.      The plaintiff, Robert D. Jones, brings this action against the defendant, Consolidated

Rail Corporation (Conrail) for violations of the *Federal Rail Safety Act*, 49 U.S.C. §20109.

## JURISDICTION

2.      This court has subject matter jurisdiction in this case pursuant to the *Federal Railroad*

*Safety Act*, 49 U.S.C. §20109(d) (3)(FRSA).

## PARTIES

3.     The plaintiff, Robert D. Jones, is a citizen and resident of the State of New York, residing therein at 1566 Arthur Kill Road, Staten Island, New York 10312.

4.     The defendant, Consolidated Rail Corporation (Conrail), is a corporation duly organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania, and does business in the Eastern District of Pennsylvania.

5.     At all times material hereto, the defendant operated trains in, had employees working in, and did business in the Eastern District of Pennsylvania.

## FACTS

6.     During all times mentioned herein, the defendant railroad carrier engaged in interstate commerce by providing railroad transportation between several of the states of the United States, including but not limited to, the Commonwealth of Pennsylvania, the State of New Jersey, and other states.

7.     At the time of the defendant's FRSA violations, the plaintiff was employed by the defendant railroad as a conductor/brakeman, and qualified as an employee within the meaning of 49 U.S.C. §20109.

8.     All of the averments set forth in the foregoing paragraphs are incorporated in the following Causes of Action as though set forth therein at length.

## COUNT 1: FRSA CAUSE OF ACTION –I

9.     Plaintiff has been employed by Conrail since October, 2009.

10.     Plaintiff is a qualified conductor/brakeman who primarily works at Conrail's Oak Island Yard in or near Newark, New Jersey.

11.     On or about December 2, 2004, at or about 6:59 p.m., plaintiff was inspecting a handbrake on a rail car located in the Oak Island Yard.

12.     As part of the inspection, and while his feet were firmly planted on the ground, it was necessary for plaintiff to tap the brake chain to ascertain its tension.

13.     In doing so, the brake chain suddenly moved, trapping plaintiff's left hand and his left ring finger.

14.     Plaintiff suffered a laceration of his left hand and left ring finger, as well as an open fracture of that finger.

15.     Plaintiff also suffered nerve damage to the left hand, including the ulnar digital nerve.

16.     Plaintiff's injuries were so severe that it was necessary for him to undergo left ring finger irrigation and debridement neurolysis of the ulnar digital nerve and repair of the same under microscope.

17.     It was further determined that plaintiff's injuries included a non-union of the avulsion fracture and post-hypo traumatic arthropathy.

18.     As a result of plaintiff's left hand crush injury, he experienced extreme pain and was bleeding profusely.

19.     Plaintiff promptly reported his accident and injuries by radio and was driven by another employee to the Oak Island Yard Office.

20.     When plaintiff arrived at the Yard Office, he was met by Trainmaster Scruggs.

21.     Plaintiff informed Mr. Scruggs, "I was injured", his hand was extremely painful and bleeding profusely, and he requested that he immediately be taken to a hospital emergency room.

22.     Mr. Scruggs informed the plaintiff that he would ultimately take him to obtain medical care, he could not do so at that time. Instead, he told him that there were certain inspections,

3

interviews, etc. that had to be completed before he would be permitted to obtain medical treatment for plaintiff.

23.     Plaintiff reiterated to Mr. Scruggs the serious injury that he believed he had suffered as a result of the improperly operating handbrake, and asked Mr. Scruggs to take him to the hospital first, and to allow him to give statements, go to the accident scene, etc., after his emergency room treatment was completed.

24.     Mr. Scruggs did not promptly take plaintiff to a hospital emergency room as plaintiff had requested. Instead, Mr. Scruggs required the plaintiff to see other supervisors, took him to the accident scene to identify the car involved, and stayed until the car was removed from the consist.

25.     Mr. Scruggs did not take the plaintiff to the hospital emergency room until all that was completed, which took approximately fifty-five (55) minutes.

26.     When Mr. Jones was discharged from the hospital emergency room, the doctor informed him that he would need to follow up with a surgeon, would most likely require surgery, and should not work for at least a few days.

27.     Despite the recommendation that plaintiff not return to work, Mr. Scruggs interfered with this medical recommendation, required plaintiff to return to the Oak Island Yard Office, and did not permit him to go home until additional questions were asked and forms were completed.

28.     In so doing the defendant railroad acted with reckless disregard for the law and with complete indifference to the plaintiff's rights under the FRSA.

29.     As a result of this conduct, Conrail, by and through Mr. Scruggs, denied, delayed and/or interfered with plaintiff's medical or first aid treatment.

30.     Furthermore, Conrail, by and through Mr. Scruggs also denied plaintiff his right to be promptly transported to the nearest hospital.

4

31.     On June18, 2015, the plaintiff filed a FRSA complaint with the Secretary of Labor's Region III OSHA Whistleblower Office.  This was filed within 180 days from the date the plaintiff became aware of the defendant railroad's intent to take adverse or unfavorable personnel action against him.

32.     The Region II OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation.  However, OSHA did not issue a final decision within 210 days after the filing of the FRSA complaint.  The delay was not due to any bad faith on the part of the plaintiff.

33.     Plaintiff has exhausted all administrative remedies as required by statute and/or common law.

34.     Pursuant to 49 U.S.C. §20109(d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in the United States District Court for a jury trial regarding the railroad's violation of the FRSA.

35.     Pursuant to the FRSA, 49 U.S.C.§20109(d)(3), the plaintiff is now bringing this original action in law and equity for de novo review by the United States District Court for the Eastern District of Pennsylvania, which court has jurisdiction over this FRSA action without regard to the amount in controversy.

## COUNT II:  FRSA CAUSE OF ACTION – II

36.     Plaintiff has been employed by Conrail since October, 2009.

37.     Conrail alleged that plaintiff's December 2, 2004 accident resulted, and/or involved his getting off moving equipment and crossing tracks where railcars are closer than twenty-five (25)

5

feet apart.

38.     In addition, Conrail accused the plaintiff of falsely reporting his accident.

39.     These accusations were completely untrue and were merely made in response to and as retaliation for plaintiff reporting an accident, and reporting unsafe equipment to his Conrail Officers, Managers and Supervisors.

40.     On March 2, 2016, Conrail held a disciplinary hearing, as a result of the retaliatory charges that had been brought against the plaintiff, and on March 15, 2016, Conrail terminated plaintiff's employment.

41.     The retaliatory nature of the disciplinary hearing and subsequent termination is evident from the fact that witnesses lied during the hearing. Despite the fact that thephysical evidence that was presented was contrary to the testimony and contrary to the charges made against the plaintiff, the plaintiff was nonetheless terminated.

42.     The severity of the March 2016 retaliatory actions taken against the plaintiff is further as a result of, and as punishment and retaliation for, plaintiff making a complaint against the defendant with OSHA, on or about June 18, 2015.

43.     Plaintiff is a qualified conductor/brakeman who primarily works at Conrail's Oak Island New Jersey Yard.

44.     The defendant railroad had knowledge of all of the protected activities referenced above.

45.     The defendant railroad took adverse or unfavorable actions, and engaged in a pattern of retaliatory behavior, against the plaintiff in whole or in part due to his protected activities when it engaged in the aforementioned retaliation and discipline.

46.     In so doing the defendant railroad acted with reckless disregard for the law and with

6

complete indifference to the plaintiff's rights under the FRSA.

47.     On June 15, 2016, the plaintiff filed a FRSA complaint with the Secretary of Labor's Region II OSHA Whistleblower Office.  This was filed within 180 days from the date the plaintiff became aware of the defendant railroad's intent to take adverse or unfavorable personnel action against him.

48.     The Region II OSHA Whistleblower Office commenced its investigation, and the plaintiff fully cooperated with OSHA's investigation.  However, OSHA did not issue a final decision within 210 days after the filing of the FRSA complaint.  The delay was not due to any bad faith on the part of the plaintiff.

49.     Plaintiff has exhausted all administrative remedies as required by statute and/or common law.

50.     Pursuant to 49 U.S.C. §20109(d)(3) of the FRSA, the plaintiff has a statutory right to bring an original action in the United States District Court for a jury trial regarding the railroad's violation of the FRSA.

51.     Pursuant to the FRSA, 49 U.S.C.§20109(d)(3), the plaintiff is now bringing this original action in law and equity for de novo review by the United States District Court for the Eastern District of Pennsylvania, which court has jurisdiction over this FRSA action without regard to the amount in controversy.

**WHEREFORE,** in order to encourage employees to freely report all injuries without fear of any retaliation, and further to encourage all employees to freely report unsafe conditions and violations of federal statutes and regulations, thereby ensuring the Federal Railroad Administration has the necessary information to develop and administer an effective rail safety regulatory program that promotes safety in every area in our nation's railroad operations, the plaintiff demands a judgment

upon each Count under the FRSA for all relief necessary to make him whole, including but not limited to:

    a.   expungement of all references to the disciplinary actions set forth above;

    b.   compensatory damages for mental anguish and emotional distress due to the defendant's conduct;

    c.   compensatory damages for economic losses due to the defendants' conduct;

    d.   the statutory maximum of punitive damages;

    e.   special damages for all litigation costs including expert witness' fees and attorneys' fee.

COFFEY KAYE MYERS & OLLEY

BY: _____

ROBERT E. MYERS
LAWRENCE A. KATZ
Counsel for Plaintiff